**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| IN RE:<br><br>Reginald Elmore and Clamentine V Elmore,<br><br>Debtors. | C/A No. 25-00331-EG<br><br>Chapter 7<br><br>**ORDER DENYING MOTION TO CONVERT AND DISMISSING CASE WITH PREJUDICE** |

**THIS MATTER** is before the Court on two motions filed by Reginald Elmore and Clamentine V Elmore ("Debtors"): the Motion to Dismiss Case filed on February 14, 2025 (the "Motion to Dismiss"),[1] and the Motion to Convert Case from Chapter 7 to Chapter 13 filed on March 12, 2025 (the "Motion to Convert"; and collectively, the "Motions").[2] Janet Haigler, the Chapter 7 trustee assigned to Debtors' bankruptcy case ("Trustee"), filed an objection to the Motion to Dismiss (the "Objection to Dismissal")[3] as well as a response to the Motion to Convert (the "Response to Conversion").[4] The Court held a hearing on Debtors' Motions on March 27, 2025. Hearings were also held concurrently on the Trustee's objection to Debtors' claimed exemptions[5] and the Motion for Relief from Stay filed by Americredit Financial Services, Inc. dba GM Financial ("GM Financial"),[6] which matters have been mooted by this order dismissing the case. The Trustee, Debtors, and counsel for GM Financial attended the hearings, and Debtors testified under oath. After hearing Debtors' testimony and the parties' arguments, the Court

---

[1] ECF No. 28.
[2] ECF No. 39.
[3] ECF No. 37, filed Mar. 5, 2025.
[4] ECF No. 45, filed Mar. 21, 2025.
[5] ECF No. 18, filed Feb. 3, 2025.
[6] ECF No. 27, filed Feb. 14, 2025.

1

indicated that Debtors had not satisfied their burden of proof on the Motion to Convert but there was sufficient cause to dismiss their case with prejudice for a period of six months.

Considering the record before the Court, including the pleadings on file, the testimony presented, and the parties' arguments made at the hearing, the Court makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT

### A. Commencement of the Bankruptcy Case

Debtors filed for Chapter 7 bankruptcy protection on January 30, 2025 (the "Petition Date") without the assistance of counsel, and they have continued in this case *pro se*.[7] In addition to their Voluntary Petition, Debtors also filed their schedules and Statement of Financial Affairs ("SOFA") on the Petition Date.[8] According to their answer to Item 12 on the Voluntary Petition and Item 27 of the SOFA, Debtors are sole proprietors of AM Express LLC, a trucking company located in South Carolina (the "Business"). The Business, however, is not listed as an asset on Debtors' schedules. The Voluntary Petition reflects that Debtors' debts are primarily consumer debts. Schedule I (Income) indicates that Mr. Elmore is a truck driver with AM Express LLC with a monthly income of $9,200.00 and Mrs. Elmore is an insurance agent with a monthly income of $1,500.00. Schedule I further notes that "Debtor 1 income fluxuate [sic] and Debtor 2 works on commission so pay is not the same." At the hearing, Debtors testified that Mrs. Elmore had lost her previous job as the Director of Housing Authority in Florence, South Carolina and reiterated that the income from the trucking business fluctuates and he is currently only driving one truck, which, coupled with the current state of the economy, is causing financial hardships. Schedule J

---

[7] The Voluntary Petition indicates that Debtors received the assistance of a bankruptcy petition preparer. At the hearing, Debtors indicated that the preparer did not provide them with any legal advice and solely served as a scrivener to help prepare their schedules.

[8] ECF No. 1. Schedule H was missing from the original schedules but later filed at ECF No. 23.

2

(Expenses) reflects that Debtors' household has a total of 4 members—including two dependent children of undisclosed ages—with estimated monthly expenses of $12,427.00, resulting in a negative monthly net income of ($1,727.00).

Debtors' Schedule A/B lists assets with a total estimated value of $511,771.00. More specifically, Mrs. Elmore is listed as having a real property interest in a single-family home in Florence, South Carolina (the "Residence"), with an estimated value of $337,577.00. In addition to other personal property interests and household items totaling $6,925.00 in estimated value, Debtors' schedules disclose their interests in four vehicles and a motorcycle, which together have a total estimated value of $167,159.00: (1) a 2023 Genesis GV 80 valued at $49,580.00; (2) a 2003 Honda Accord valued at $1,000.00 and noted as "daughter's car"; (3) a 2010 Ford 150 valued at $4,500.00 and noted as "son's car"; (4) a 2023 GMC Sierra Denali (the "Denali") valued at $78,723.00; and (5) a 2021 Harley Davidson motorcycle valued at $33,356.00. On their Schedule C, Debtors claim exemptions on all their assets in the amount of each asset's estimated value; however, Schedule C fails to cite or otherwise reference "specific laws that allow exemption" in the appropriate column.

Schedule D indicates that Debtors owe secured debt in the total amount of $750,977.00. More specifically, Schedule D notes that the following creditors each hold a secured claim in the same amount as the estimated value Debtors assigned in Schedule A/B to the underlying collateral: (a) GM Financial, with a claim secured by the Denali for debt owed by Mr. Elmore; (b) Harley Davidson Financial, with a claim secured by the Harley Davidson motorcycle for debt owed by Mr. Elmore; (c) Hyundai Motor Finance, with a claim secured by the 2023 Genesis GV 80; and (d) M&T Bank, with a claim secured by the Residence for debt owed by Mrs. Elmore. The same secured creditors are also listed on Schedule G as parties to leases or executory contracts for the

3

same collateral. Debtors also scheduled a secured debt owed by Mr. Elmore to First US Bank in the amount of $86,509.00 for a camper (the "Camper"); however, no interest in such collateral is listed on Schedule A/B.

In addition to these secured claims, Debtors' Schedule E lists priority unsecured claims owed to the Internal Revenue Services in the amount of $41,000.00 and to the State of South Carolina in the amount of $10,500.00. Notably, however, Official Form 106Sum, providing the summary of Debtors' assets and liabilities (the "Summary"), lists the total amount of priority debts as $0.00. Additionally, while the Summary reflects that Debtors have general unsecured debt of $179,289.00, the actual sum of the various claims listed in Schedule F is well over $200,000.00.[9]

Debtors also filed Official Form 122A-1 (Chapter 7 Statement of Your Current Monthly Income), which indicates that based on the figures provided, their household income exceeds the median family income for a family of four in South Carolina. Accordingly, as the checked box in the top righthand corner of the first page of Debtors' Form 122A-1 indicates, "[t]he calculation to determine if a presumption of abuse applies will be made under *Chapter 7 Means Test Calculation* (Official Form 122A-2)." No such form, however, has been filed with the Court. Additionally, though Debtors' Application to Pay Filing Fee in Installments was granted and stated that the second installment of $80.00 would be due by March 3, 2025, Debtors have not made any other installment payments other than their initial payment of $113.00.[10]

---

[9] Debtor's Schedules and SOFA were filed with the Voluntary Petition in a 135-page document. Some of the pages in the document are duplicates—many of which are blank forms. Overall, the document is not well organized, making it more difficult for the Court to determine whether pages are missing, whether any claims are duplicated, or what the total amount of the unsecured claims in Schedule F is.
[10] *See* ECF Nos. 6, 11.

4

### B. Events in the Bankruptcy Case

On February 3, 2025, the Trustee filed an Objection to Debtors' Claims for Exemption (the "Objection to Exemptions"),[11] asserting that Schedule C fails to list the specific laws allowing the claimed exemptions and, assuming that Debtors mean to rely on the state law exemptions provided under S.C. Code Ann. § 15-41-30, the amounts claimed as exempt exceed the allowed statutory limits. Debtors filed a general response, stating their disagreement "with the decision to object to [their] exemptions," claiming that they "cannot afford to lose [their] home or [their] vehicles to get to and from work" and requesting a hearing for the court to consider their case as to why the exemptions should be allowed.[12]

On February 14, 2025, GM Financial filed a motion seeking relief from the automatic stay as to the Denali (the "Motion for Relief from Stay"), noting that the last payment received pursuant to GM Financial's security agreement with Debtors was on November 25, 2024, in the amount of $1,800.00.[13] GM Financial requests relief from the stay to proceed with enforcement of its security interest in the vehicle, noting that the amount Debtors owe is $79,544.59 while, according to the J.D. Power report, both the retail and wholesale values of the Denali are lower. Debtors later filed a short response to the Motion for Relief from Stay, requesting that the Court not grant the relief that GM Financial seeks and noting: "This vehicle is a backup for husband [Mr. Elmore's] business and the only other vehicle we have besides the car I [Mrs. Elmore] drive daily for my job. The other two vehicles we own are inoperable."[14]

The same day as the Motion for Relief from Stay was filed, Debtors filed correspondence with the Court, docketed as the Motion to Dismiss, conveying a one-sentence message: "This is to

---

[11] ECF No. 18.
[12] ECF No. 34, filed Feb. 20, 2025.
[13] ECF No. 27.
[14] ECF No. 33, filed Feb. 20, 2025.

5

inform you that Reginald and Clamentine Elmore are requesting a Motion to Voluntary [sic] dismiss our Chapter 7, Bankruptcy Case, 25-00331-eg."[15] The Clerk's Office issued a Notice of Possible Hearing on the Motion to Dismiss, giving parties 21 days to object to Debtors' dismissal request. On February 28, 2025, the Trustee held the initial meeting of creditors, which was continued to March 14, 2025, and again to March 28, 2025.[16]

On March 5, 2025, the Trustee filed the Objection to Dismissal. The Trustee requests that the Motion to Dismiss be denied, arguing that debtors do not have an absolute right to voluntarily dismiss a case in Chapter 7 and that Debtors have not established "cause" for dismissal under 11 U.S.C. § 707(a). In support for her position, the Trustee notes that while Debtors' schedules indicate that the value of the Residence and the mortgage debt owed to M&T Bank are both listed as $337,577.00, records from the Florence County Clerk of Court reflect that Debtors purchased the home in 2021 for $400,000.00, and the Trustee's online research suggests that the Residence has a current value of approximately $496,500.00. Accordingly, the Trustee asserts that there appears to be sufficient equity in the Residence to benefit the bankruptcy estate. Additionally, the Objection to Dismissal represents that on February 3, 2025, the Trustee sent Debtors a letter requesting additional financial information to confirm the bankruptcy estate's interest in certain assets, including the Camper and the Business. According to the Trustee, Debtors responded via email on February 10, 2025—four days before filing the Motion to Dismiss—acknowledging receipt of the Trustee's letter, indicating their refusal to send information regarding the Business, and noting their disagreement with the Trustee's Objection to Exemptions. At the hearing, the Trustee confirmed she has not received any of the requested information. For these reasons and

---

[15] ECF No. 28.
[16] ECF Nos. 35, 42.

6

the fact that Debtors did not provide any evidence in support of their Motion to Dismiss, the Trustee argues that Debtors have not met their burden to prove that "cause" for dismissal exists.

On March 12, 2025, Debtors filed further correspondence with the Court, docketed as the Motion to Convert, which states:

> This is to inform the court that Reginald and Clamentine Elmore requested a Motion to Voluntary dismiss this case on February 14, 2025 because we wanted the judge to approve us to convert the Chapter 7 bankruptcy file to a Chapter 13. We realize that this would be the best course of action for the situation that we are in and we don't want to lose our home/shelter.

The Court set the matter for a hearing on March 27, 2025, to coincide with the hearing on the Motion to Dismiss scheduled for the same day. On March 21, 2025, the Trustee filed the Response to Conversion, indicating her concern that Debtors have continued in this case without the assistance of legal counsel. The Response to Conversion also asserts that based on the figures Debtors provided in their Schedules I and J, "it appears that a Chapter 13 plan is unlikely to be successful since the Debtors have negative income which would potentially lead to plan failure and dismissal of a Chapter 13 case."

At the hearings on March 27, 2025, Debtors testified under oath that they have no legal training and did not consult an attorney prior to filing for bankruptcy. According to Mr. Elmore, Debtors chose to file their case under Chapter 7 after doing their own research, in part because they thought they would be able to keep their home and the Business in Chapter 7, but they realized after filing that they were mistaken in their understanding of the differences between Chapter 7 and Chapter 13. Mr. Elmore testified that he did not provide the information the Trustee requested regarding the Business because he thought that, as a separate legal entity, his limited liability trucking company was not included in the bankruptcy. Debtors testified they understood they might have to give up some of their assets in bankruptcy—namely contemplating the Denali and

7

the Camper—but they wanted to keep their home and the Business—Mr. Elmore's livelihood to sustain their family—so they were hesitant to respond to the Trustee's requests before consulting with an attorney. Debtors confirmed that they had not provided the Trustee with the requested information as of the hearing date, though they testified as to the value of assets the Business owns and that they believe they have equity in the Residence. Mrs. Elmore indicated that Debtors spoke to several attorneys but were unable to find anyone willing to take on their case at this stage, though one attorney said he would represent them if they refiled or successfully had their case converted to a Chapter 13 case.

According to Mrs. Elmore, Debtors filed the Motion to Dismiss first because they thought they needed to have their case dismissed before they could pursue a Chapter 13 case and did not realize they could request to convert their case while it remained pending. Though they did not withdraw their Motion to Dismiss, Debtors appeared to indicate that they preferred to proceed in Chapter 13. The Trustee stated that out of the proposed options, she believed dismissal of the case would be better than conversion for both creditors and Debtors because it would put the parties back in the position they were in before the case commenced and allow Debtors to file a new case with correct documents and the assistance of counsel.

## CONCLUSIONS OF LAW

### I. Conversion

Under the facts of this case, Debtors have not shown that conversion of their case to Chapter 13 is warranted. Section 706(a) of the Bankruptcy Code provides: "The debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1209 or 1307 of this title." 11 U.S.C. § 706(a).

8

A debtor's right to convert from chapter 7 to 13, however, is not absolute. While at first glance, §706(a) appears to give a debtor broad authority to convert to a different chapter, in *Marrama v. Citizens Bank of Massachusetts*, the U.S. Supreme Court analyzed that section with the gloss of § 706(d), which specifies that "[n]otwithstanding any other provision of this section, a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter." 549 U.S. 365 (2007); 11 U.S.C. § 706(d). Further looking at 11 U.S.C. §§ 109(e), 1307(c), and 105, the *Marrama* court found that a debtor does not have an absolute right to convert to Chapter 13 under § 706(a) if the debtor (a) is not eligible for chapter 13 under the requirements and limits of § 109(e), or (b) has engaged in bad faith conduct—pre-petition or during the pendency of the Chapter 7 case—sufficient to constitute "cause" that would ultimately warrant dismissal or reconversion of the Chapter 13 case under §1307(c). *Marrama*, 549 U.S. at 372-74*In re Williams*, 2023 WL 5437543, *3 (Bankr. S.D. Ga. Aug. 23, 2023); *In re Bradley*, 649 B.R. 693, 700-01 (Bankr. D.S.C. 2023); *In re Cilwa*, No. 15-00263-HB, 2016 WL 2641963, at *3 (Bankr. D.S.C. Apr. 16, 2016); *see also In re Ansin*, 659 B.R. 715, 723 (B.A.P. 1st Cir. 2024) (quoting *Culp v. Stanziale* (*In re Culp*), 545 B.R. 827, 840 (D. Del. 2016), aff'd, 681 F. App'x 140 (3d Cir. 2017)) ("[W]here a debtor fails to produce evidence of the existence of a regular income, [the debtor] does not qualify for Chapter 13 relief under ... § 109(e)."); *In re Autry*, No. 24-50215, 2024 WL 4131856, at *3 (Bankr. M.D.N.C. Aug. 15, 2024) (noting that "a chapter 7 debtor forfeits the right to convert to chapter 13 if he or she has engaged in bad faith conduct" and "[n]umerous decisions . . . have found that a debtor's concealment of assets and transfers can constitute bad faith sufficient to deny conversion").

While the Supreme Court did not articulate what constitutes lack of good faith when considering motions to convert from chapter 7 to chapter 13, it recognized that a court may take

9

appropriate action and invoke such exception to a debtor's right to convert is to be invoked where the purpose of the "fresh start" to be provided to the "honest but unfortunate debtor" is not abused:

> We have no occasion here to articulate with precision what conduct qualifies as "bad faith" sufficient to permit a bankruptcy judge to dismiss a Chapter 13 case or to deny conversion from Chapter 7. It suffices to emphasize that the debtor's conduct must, in fact, be atypical. Limiting dismissal or denial of conversion to extraordinary cases is particularly appropriate in light of the fact that lack of good faith in proposing a Chapter 13 plan is an express statutory ground for denying plan confirmation.

*Marrama*, 549 U.S. at 375 n.11.

The burden of proof as to a debtor's motion to convert rests on the movant. *Bradley*, 649 B.R. at 701. The debtor bears the initial burden to make a *prima facie* case for conversion by demonstrating that (1) there has been no prior conversion of the case, (2) the debtor is eligible under 11 U.S.C. § 109 to be in Chapter 13, and (3) conversion is to achieve a purpose permitted under the proposed chapter. *Id.* (*citing In re Broad Creek Edgewater*, *LP*, 371 B.R. 752, 757 (Bankr. D.S.C. 2007); *Ansin*, 659 B.R. at 723. The burden then shifts to the objecting party—here, the Trustee—to demonstrate that the debtor should not be permitted to convert under *Marrama*. *Bradley*, 649 B.R. at 701. Here, the record reflects Debtors failed to make a *prima facie* showing that they would be eligible to be in Chapter 13. While Debtors provided some testimony at the hearing regarding their assets, the extent of the value of their assets and liabilities is still unclear. What is clear, however, is that the schedules are deficient in many respects.

Pursuant to 11 U.S.C. § 109(e), "only an individual with regular income" that owes unsecured debts of less than §465,275 and secured debts of less than $1,395,875.00 are eligible to seek relief under Chapter 13.[17] As set forth above, Schedule J reflects that Debtors' net monthly income is negative ($1,727.00) and, as Debtors testified at the hearing and indicated in their

---

[17] Effective April 1, 2025, the amount of unsecured debt allowed for a Chapter 13 debtor under § 109(e) was amended to "less than $526,700" and the amount of secured debt allowed was changed to "less than $1,580,125."

10

schedules, their income from their current jobs is subject to fluctuate. Moreover, according to Debtors' testimony, there is equity in some of their assets, though it is not clear to what extent such equity would be exempt. Thus, Debtors have not presented sufficient evidence to show that they have sufficiently stable and regular income as required to be Chapter 13 debtors, and it is not clear that they would be able to propose a feasible plan. *See*, *e.g.*, *Ansin,* 659 B.R. at 725-26 (denying motion to convert, finding that debtor failed to make a prima facie case for conversion by showing that she had the sufficiently stable and regular income required to be a Chapter 13 debtor).

## II. Dismissal

Chapter 7 debtors do not have an absolute right to voluntary dismiss their case. *In re Wood*, No. 16-06515-DD, 2017 WL 1475973, at *2 (Bankr. D.S.C. Apr. 21, 2017) (citing *In re Thrower*, No. 14–30265, 2014 WL 1873399, at *3 (Bankr. W.D.N.C. May 8, 2014)). Unlike a Chapter 13 case, wherein a debtor may move for voluntary dismissal at any time so long as the case has not previously been converted, a Chapter 7 case can only be dismissed upon the debtor's motion for "cause." Compare 11 U.S.C. § 1307(b) ("On request of the debtor at any time, if the case has not been converted under section 706, 1112, or 1208 of this title, the court shall dismiss a case under this chapter.") with 11 U.S.C. § 707(a) ("The court may dismiss a case under this chapter only after notice and a hearing and only for cause . . . ."). The debtor bears the burden of showing that cause exists to dismiss the case. *See In re France*, No. 20-03044-DD, 2021 WL 5496563, at *2-3 (Bankr. D.S.C. Nov. 23, 2021).

Section 707(a) provides a non-exhaustive list of examples for what may constitute sufficient cause for dismissal, including "unreasonable delay by the debtor that is prejudicial to the creditor" and "nonpayment of any fees or charges required under chapter 123 of title 28." 11 U.S.C. §707(a)(1), (2). In determining whether there is sufficient cause to justify dismissal, courts

11

have considered factors such as "(1) whether dismissal is in the best interest of the debtor; (2) whether dismissal is in the best interest of the creditors; (3) whether dismissal would result in an abuse or manipulation of the system; and (4) whether dismissal is justified by compelling equitable principles." *Wood*, 2017 WL 1475973 at *2 (quoting *In re Hopper*, 404 B.R. 302, 308 (Bankr. N.D. Ill. 2009)); *France*, 2021 WL 5496563, at *2. The second of these factors—whether dismissal is in creditors' best interest—is the most important consideration. *Wood*, 2017 WL 1475973 at *2 (citing *In re Kirven*, 188 B.R. 15, 16 (Bankr. D.S.C. 1994)). Courts have also found sufficient cause for dismissal exists where a debtor's mistake of fact, coupled with another element, justifies dismissal. *In re Leonard*, No. 21-01299-HB, 2021 WL 3919818, at *4 (Bankr. D.S.C. Sept. 1, 2021) (citing example cases).

The facts here support the conclusion that dismissal of Debtors' case is warranted. The Court agrees with the Trustee that dismissal is in creditors' best interest because it will remove the protection of the automatic stay, thus allowing GM Financial and other creditors to proceed with exercising their rights under state law. Though the filing of this case has delayed creditors in obtaining relief, dismissal is the best option to at least return creditors to their position pre-petition, whereas continuation of the case in either Chapter 7 or Chapter 13 would cause further delay that could result in abuse or manipulation of the system as Debtor enjoy the protection of the automatic stay. Accordingly, the Court finds that there is sufficient cause to justify dismissal of this case.

Granting Debtors' Motion to Dismiss outright without penalty, however, would leave the door open for potential abuse. Pursuant to 11 U.S.C. § 349(a), "[u]nless the court, for cause, orders otherwise, the dismissal of a case under this title does not . . . prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(g) of this title." Section 109(g) states that "[n]otwithstanding any other provision of this section, no individual or

family farmer may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if . . . the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362 of this title." 11 U.S.C. § 109(g)(2). Moreover, the Fourth Circuit has recognized that debtors can be barred from refiling other bankruptcy cases when there is evidence of bad faith. *In re Pressley*, 518 B.R. 867, 872 (Bankr. D.S.C. 2014) (citing *Colonial Auto Ctr. v. Tomlin (In re Tomlin)*, 105 F.3d 933, 937 (4th Cir. 1997)). "The general rule is that dismissal with prejudice is warranted when there is 'egregious behavior' that prejudices creditors and is abusive of the bankruptcy system." *Id.* (quoting *Tomlin*, 105 F.3d at 937).

Here, the Court finds that dismissal with prejudice is warranted under the circumstances. Though the record before the Court does not lead to a finding that Debtors have acted in bad faith, they have not provided the information the Trustee requested regarding their assets and liabilities, so the Court does not have a full picture of Debtors' financial situation to understand their motivation in filing this case and requesting dismissal. Additionally, if the case is dismissed without prejudice as is the default under § 349(a), Debtors may refile their case under Chapter 13 to invoke the automatic stay again, essentially circumventing the Court's denial of their Motion to Convert. To ensure that further prejudice does not result to GM Financial and other creditors seeking to exercise their state law rights, dismissal of this case shall be with prejudice so as to bar Debtors from filing another bankruptcy case for a period of 180 days. This is consistent with § 109(g), which applies here given that Debtors requested voluntary dismissal of their case around or after the time GM Financial filed its Motion for Relief from Stay.

**IT IS, THEREFORE, ORDERED** that this case is hereby dismissed with prejudice for a period of 180 days from the entry of this Order, during which time Debtors are barred from filing any petition for relief under any chapter of the Bankruptcy Code.

**AND IT IS SO ORDERED.**

**FILED BY THE COURT**
**04/02/2025**



Elisabetta G. M. Gasparini
US Bankruptcy Judge
District of South Carolina

Entered: 04/02/2025